## SIMON KELMAN *v.* WILLIAM RYAN.
[No. 3, October Term, 1932.]

*Decided January 3rd, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Herbert L. Grymes,* with whom was *George Hofferbert* on the brief, for the appellant.

*August Levene,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant, Simon Kelman, recovered in the People's Court of Baltimore City a judgment for the sum of $10.65 against the appellee, William Ryan, for groceries sold him. Upon this judgment an attachment was issued out of said court and laid in the hands of Goldman Bros. Plumbing Company, the employer of William Ryan, attaching the latter's wages. The case was heard and a judgment of condemnation was entered against the garnishee in these words: "Judgment rendered in the above entitled case this 15th day of September, 1930, in favor of the Plaintiff against the Garnishee, Goldman Brothers Plumbing Company, binding 10% of the Salary, Wages or Commissions of Defendant William Ryan until the judgment of $18.65 is paid," which last sum included costs.

After the entry of this judgment, William Ryan, the judgment debtor, filed his petition in the Baltimore City Court asking for a writ of *certiorari,* alleging that the judgment was rendered without authority or jurisdiction, and was nugatory and of no effect, as the said act of the General Assembly of Maryland was "in violation of the Constitution of the United States and of the Fourteenth Amendment thereto, and of the 23rd article of the Declaration of Rights of this State. * * *" A motion to quash the writ was filed. After hearing thereon, the court held the act unconstitutional, and overruled the motion, and the judgment in the People's Court against Goldman Bros. Plumbing Company, garnishee, was, by its order, declared void and of no effect. It was from that order that the appeal in this case was taken.

The Act of 1929, ch. 265, here in question, is as follows:

"An Act to add six new sections to Article 9 of the Annotated Code of Maryland (1924 Edition), title 'Attachments,' sub-title 'Attachments of Wages or Hire,' said new sections to be known as Sections 33A to 33F, both inclusive, and to follow immediately after Section 33 of said Article, relating to the attachment of wages, salaries and/or commissions for the payment of judgments for groceries and food supplies under certain conditions.

"Section 1. Be it enacted by the General Assembly of Maryland, That six new sections be and they are hereby added to Article 9 of the Annotated Code of Maryland (1924 Edition), title 'Attachments,' sub-title 'Attachments of Wages or Hire,' said new sections to be known as Sections 33A to 33F, both inclusive, to follow immediately after Section 33 of said Article, and to read as follows:

"33A. The provisions of the aforegoing Section 33 of this Article shall not apply to judgments entered for groceries, foodstuffs, meats, provisions and other food supplies, for the household use of the defendant or defendants, his, her or their family and for the boarders or guests of the defendant or defendants.

"33B. The holder of a judgment for groceries, foodstuffs, meats, provisions and other food supplies for the household use of the defendant or defendants, his, her or their family, or for his, her or their boarders or guests, may have an attachment issued by a justice of the peace or a court of competent jurisdiction to bind ten per centum (10%) of the salary, wages or commissions of the debtor, due or as the salary, wages or commission shall become due until the judgment shall have been satisfied.

"33C. Should an attachment be issued to bind the salary, wages or commissions as aforesaid, no subsequent attachment shall take effect until such preceding attachment shall have been satisfied.

"33D. It shall not be necessary that more than one writ of garnishment or one set of interrogatories be served on the garnishee in such cases, but the court shall render judgment

522

providing for the monthly, semi-monthly, weekly or daily payments to be made to the seizing creditor, according to the manner best suited to the circumstances, until the indebtedness is paid; but the court in its discretion, may re-open the case upon the motion of any party concerned for evidence affecting the proper continuance of such judgment, and the court shall retain jurisdiction to amend or set aside its judgment at any time in its discretion, and should judgment by default be taken against any party garnishee, such party garnishee may obtain a re-opening of the case upon proper showing and within the discretion of the court.

"33E. The interrogatories to be served upon the garnishee shall include a question or questions, the answer to which shall inform the court as to whether or not the defendant or defendants in the suit is employed by the garnishee, and if so what his, her or their rate of compensation is, in what manner it is paid, and whether or not there are other judgments on garnishments affecting such wage, salary or compensation, and if so, the status thereof.

"33F. The provisions of Sections 33A to 33E, inclusive, of this Article shall be available only to the actual *bona fide* holder of a judgment procured by the actual vendor of groceries, food-stuffs, meats, provisions and other food supplies, or his or her heirs or personal representatives, and not to the assignee of any such vendor."

As the preceding section 33 of article 9 of the Code was attempted to be repealed by the said act of 1929, in so far as it applies to those judgments mentioned in the latter act, we will likewise set it out in full. It is as follows: '33. No attachments of the wages or hire of any laborer or employee, in the hands of the employer, whether private individuals or bodies corporate, shall affect any salary or wages of the debtor which are not actually due at the date of the attachment; and the sum of one hundred dollars of such wages or hire due to any laborer or employee by any employer or corporation shall always be exempt from attachment by any process whatever."

The effect of the act of 1929, if valid, is: (1) To exempt those named in the act from the provisions of section 33, which provides that only those wages due at the date of the attachment may be attached, and of the wages due an exemption of $100 shall be allowed; while all others are subject to its provisions. (2) It confers upon those creditors named in the act the right to have issued an attachment "to bind ten per centum (10%) of the salary, wages or commissions of the debtor, due or as the salary, wages or commission shall become due until the judgment shall have been satisfied" (section 33B); and in such cases "the Court shall render judgment providing for the monthly, semi-monthly, weekly or daily payments to be made to the seizing creditor, according to the manner best suited to the circumstances, until the indebtedness is paid * * *" (section 33D). These rights are conferred upon no other class of creditors, and no other class of employers is subjected to this method of collecting the wages or salaries owing by them to their employees.

The question here presented is whether the act in question is a valid enactment under section 1 of the Fourteenth Amendment to the Constitution of the United States, which guarantees "the equal protection of the laws." This amendment of the Constitution was intended to secure equality of right, and it renders unconstitutional all laws, unless passed under the power of police regulation, which may properly be construed as applying to some persons of a class, when it does not apply to others of the same class or of a like situation, and between which there is no reasonable difference warranting such discrimination.

It is recognized and established by the courts of this country, both federal and state, that the legislature may, under conditions, create classes and subject all persons coming within the classification to burdens or duties not imposed upon individuals outside of the classes, or may confer rights and privileges upon those within the classes that are not enjoyed by others not embraced therein. These classifications, however, must not be arbitrary or unreasonable, but must rest upon some difference which bears a reasonable and just rela-

tion to the act—the thing—in respect of which the classification is proposed. Or, as otherwise stated, a statute which denies to one person the protection that is accorded to others under the same conditions and in the like situation, or which imposes on one a burden not similarly borne by others, is in both instances invalid under the paramount organic law because of its discrimination. *Luman v. Hitchens Bros. Co.,* 90 Md. 14, 44 A. 1051, 1054; *State v. Potomac Coal Co.,* 116 Md. 401, 81 A. 686; *Clark v. Harford Agric. etc. Assn.,* 118 Md. 621, 85 A. 503; *Storck v. Baltimore City,* 101 Md. 486, 61 A. 330; *Criswell v. State,* 126 Md. 108, 94 A. 549, 550; *Keller v. State,* 122 Md. 684, 90 A. 603; *Watson v. State,* 105 Md. 657, 66 A. 635; *Kenneweg v. Allegany County,* 102 Md. 127, 62 A. 249; *Hayes v. Missouri,* 120 U. S. 68, 7 S. Ct. 350, 30 L. Ed. 578; *Barbier v. Connolly,* 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923; *St. Louis & San Francisco Rwy. Co. v. Mathews,* 165 U. S. 1, 17 S. Ct. 243, 41 L. Ed. 611; 12 *Corpus Juris,* 1146; *Cooley on Constitutional Limitations,* 249.

In deciding this case, we are to determine whether there are persons not named in the statute who are by it wrongfully denied the equal protection of the laws. In *Criswell v. State, supra,* this court said: "What satisfies this equality has not been, and probably never can be, precisely defined. Generally, it has been said that it 'only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances.' *Kentucky Railroad Tax Cases,* 115 U. S. 321 (6 S. Ct. 57, 29 L. Ed. 414)."

The rights and privileges conferred by the statute are confined to those to whom the debtor is indebted for "groceries, foodstuffs, meats, provisions and other food supplies, for the household use of the defendant or defendants, his, her or their family and for the boarders or guests of the defendant or defendants."

So far as we are able to discover, there is no apparent reason why the statute should confer privileges upon vendors

of the articles mentioned therein, and not upon those extending credit for other necessaries of life, including fuel, clothing, and medical services.

The act also subjects employers of persons indebted for the articles named in this statute to burdens in the settlement of wages owing their employees, to which no other class of employers are subjected, including those employers of debtors for other essentials or necessaries of life.

The discriminations created by the act do not rest upon a substantial or recognizable difference between the class embraced and the class excluded, or, as stated by Judge McSherry in *Luman v. Hitchens, supra,* they do not rest upon some difference "which bears a reasonable and just relation to the act—the thing—in respect to which the classification is proposed."

In our judgment, the classification embraced in the act is arbitrary and unreasonable, and for such reason the act violates the Fourteenth Amendment of the Constitution of the United States.

There were other objections urged against the validity of the act, but these we need not consider or pass upon.

The order appealed from will be affirmed.

*Order affirmed, with costs.*